IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSE ESTALA ORTIZ,

    Plaintiff,

    v.

QUIKTRIP CORPORATION, et al.,

    Defendants.

Case No. 21-2582-JAR-ADM

## MEMORANDUM AND ORDER

Defendant QuikTrip Corporation ("QT") filed a Notice of Removal on December 16, 2021,[1] removing this action from the District Court of Wyandotte County, Kansas. The Notice of Removal cites 28 U.S.C. § 1332 as a basis for jurisdiction—diversity of citizenship between the parties and an amount in controversy that exceeds $75,000—and asserts that all Defendants except QT were fraudulently joined. Before the Court are Plaintiff Jose Estala Ortiz's Motion to Remand (Doc. 16) and Motion to Toll Deadlines to Serve (Doc. 25). Also before the Court are motions to dismiss filed by Defendants QuikTrip West, Inc. (Doc. 11), QuikTrip West, LLC (Doc. 13), and Justin Kerr (Doc. 9). The motions are fully briefed, and the Court is prepared to rule. As described more fully below, under the fraudulent joinder doctrine, Plaintiff's motion to remand is denied and QuikTrip West, Inc.'s, Quik Trip West, LLC's, and Kerr's motions to dismiss are granted. Plaintiff's motion to extend the time to serve the John Doe Defendants is granted.

---

[1] Doc. 1.

**I.     Background**

According to the allegations in the Petition, on November 16, 2019, Plaintiff entered a QuikTrip gas station at 8200 Parallel Parkway, Kansas City, KS 66112, for the purpose of filling up his vehicle's gas tank with gasoline. While pumping gas, Plaintiff was not smoking or using any device that contained an open flame. Suddenly, and without warning, the gasoline caught fire and spread to Plaintiff's clothes and body—static electricity around gasoline vapors created a dangerous condition. Plaintiff alleges negligence claims, asserting that Defendants failed to provide adequate warnings at the premises to the public concerning the dangerous conditions; failed to take reasonable efforts at the premises to make the dangerous conditions safe; failed to take any action to shut off the gas, provide medical treatment, or take any reasonable efforts to mitigate Plaintiff's injuries; and failed to take reasonable efforts to extinguish the fire. As a result of Defendants' failures, Plaintiff suffered serious injuries, including severe second degree burns over approximately 25% of his body.

According to the Petition, Defendants QT, QuikTrip West, LLC ("QT West, LLC"), and QuikTrip West, Inc. ("QT West, Inc.") owned and/or had possession and control of the premises located at 8200 Parallel Parkway, Kansas City, KS 66112 ("Parallel Parkway QT store"), and maintained that location as a commercial property available to the public. Plaintiff alleges that Defendant Dustin Kerr is an area supervisor for the QT Defendants, responsible for the training of employees, the daily operations of QT stores, providing adequate warnings on the premises and on the construction and design of the stores so that the employees can maintain a visual of the pumps. Plaintiff also names eight John Doe Defendants, each of whom he alleges is "a person, member, partner, agent, employee, or representative of the Parallel Parkway QT store,

2

who was working for or on behalf of Defendant QuikTrip on or about November 16, 2019."[2] The Petition alleges Kansas citizenship for QT, QT West, Inc., QT West, LLC, and Kerr. He alleges either Kansas or Missouri residency for the eight John Doe Defendants.

QT removed this action on December 16, 2021, alleging diversity of citizenship under 28 U.S.C. § 1332(a) as a basis for federal jurisdiction, and attaching the Affidavit of Marshall Wells, QT's Vice President, General Counsel, and Corporate Secretary in support of the jurisdictional facts alleged. The Notice of Removal asserts that all Defendants other than QT should be dismissed based on fraudulent joinder. QT alleges that it is an Oklahoma corporation with a principal place of business in Tulsa, Oklahoma. QT West, Inc. is a Kansas corporation that converted into QT West, LLC on May 5, 2020, and prior to that time operated exclusively in Wichita, Kansas. QT West, LLC's sole member is QT. QT West, LLC does not own or operate any QT stores; its sole purpose is to issue QT gift cards. These allegations are supported by Marshall's affidavit.

Kerr submitted an affidavit with his motion to dismiss stating that at the time of Plaintiff's accident, he was a Division Sales Manager for QT. In that role, he was responsible for

> merchandising, negotiating prices, maintaining vendor relationships, monitoring and implementing food programs, maintaining compliance with applicable governmental food related guidelines and standards, and reviewing and maintaining planograms (diagrams and models depicting the placement of retail products on QT shelves inside the stores).[3]

He attests that he was not involved in the purchasing or maintenance of gasoline pumps and related equipment at QT stores, had no role in overseeing, training, or managing the Parallel

---

[2] *Id.* ¶¶ 8–15.
[3] Doc. 10-1 ¶ 5.

3

Parkway QT store or its employees, and never owned nor had a role in designing and constructing the Parallel Parkway QT store.

## II.     Standards

Federal district courts are required to remand a case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."[4]  To avoid remand, the removing party must establish federal jurisdiction by a preponderance of the evidence.[5]  Because federal courts are courts of limited jurisdiction, courts strictly construe federal removal statutes with a presumption against federal jurisdiction.[6]  Courts must follow the inflexible and without exception presumption against federal jurisdiction by denying jurisdiction in all cases where federal jurisdiction does not affirmatively appear in the record.[7]  Moreover, courts must resolve doubtful cases in favor of remand.[8]

### A.     Diversity Jurisdiction

Remand is generally improper if the defendant appropriately removed a case to federal court that the plaintiff could have originally filed in federal court.[9]  QT asserts federal jurisdiction based on diversity, which requires a showing of complete diversity of citizenship between the parties and an amount in controversy that exceeds $75,000.[10]  The parties do not dispute that the amount in controversy requirement is met.  For purposes of diversity jurisdiction, Plaintiff is a citizen of Kansas, QT is a citizen of both its state of incorporation and its principal

---

[4] 28 U.S.C. § 1447(c).

[5] *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013).

[6] *See Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F. Supp. 2d 1043, 1047 (D. Kan. 1999) (citations omitted).

[7] *See Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

[8] *Baby C v. Price*, 138 F. App'x 81, 83 (10th Cir. 2005).

[9] 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

[10] *Dutcher*, 733 F.3d at 987.

place of business, which are both in Oklahoma.[11] QT West, Inc. is a Kansas corporation with its principal place of business in Kansas. Courts determine a limited liability company's citizenship for jurisdictional purposes by the citizenship of its members.[12] Therefore, QT West, LLC is a citizen of Oklahoma because its sole member is QT. Kerr is a citizen of Kansas. Plaintiff names eight John Doe Defendants, and alleges that they have Kansas or Missouri citizenship. But the Court must disregard John Doe Defendants for purposes of determining diversity jurisdiction.[13]

### B. Fraudulent Joinder

The Notice of Removal asserts that all Defendants other than QT were fraudulently joined.[14] Fraudulent joinder is a difficult-to-establish exception to complete diversity that prevents remand.[15] The presence of a fraudulently joined defendant does not defeat complete diversity, as courts do not consider the citizenship of fraudulently joined parties when evaluating diversity jurisdiction.[16] Instead, under the fraudulent joinder doctrine, federal district courts disregard "for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."[17] As the party seeking federal jurisdiction, the removing party bears the heavy burden of proving a party was fraudulently joined to defeat jurisdiction by demonstrating either "(1) actual fraud in

---

[11] *See Grynberg v. Kinder Morgan Energy, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015) (noting that for purposes of diversity jurisdiction "a corporation is a citizen of its state of incorporation and the state where its principal place of business is located").

[12] *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015).

[13] *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008) (first citing 28 U.S.C. § 1441(a); and then citing *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1234–35 (10th Cir. 2006)).

[14] Doc. 1 at 1 n.1.

[15] *See Long v. Halliday*, 768 F. App'x 811, 813 (10th Cir. 2019).

[16] *Id.*

[17] *Kan. State Univ. v. Prince*, 673 F. Supp. 2d 1287, 1294 (D. Kan. 2009) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461–62 (4th Cir. 1999)).

the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[18]  QT argues the second basis for fraudulent joinder applies to the nondiverse Defendants, and requests their dismissal under the fraudulent joinder doctrine.

The standard for fraudulent joinder "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6)."[19]  Defendant "must demonstrate that there is no possibility that [Plaintiff] would be able to establish a cause of action against [the joined party] in state court."[20]  However, the Court need not "take all allegations in the complaint at face value."[21]  Instead, the Court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available."[22]  The Court must "initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned."[23]  "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty."[24]

Plaintiff argues that Defendants' motions to dismiss are procedurally improper—they do not recite the Fed. R. Civ. P. 12(b)(6) standard and rely on matters outside the pleadings.  But

---

[18] *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)).

[19] *Montano v. Allstate Indem.*, No. 99-2225, 2000 WL 525592, at *2 (10th Cir. April 14, 2000) (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d. 848, 851–53 (3d Cir. 1992)).

[20] *Id.* at *1 (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000)).

[21] *Rudzik v. Star Ins. Co.*, No. 14-1421-MLB, 2015 WL 1923892, at *3 (D. Kan. Apr. 28, 2015).

[22] *Id.* (quoting *Dodd v. Fawcett Publc'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)).

[23] *Montano*, 2000 WL 525592, at *1 (quoting *Hart*, 199 F.3d at 246).

[24] *Smoot v. Chicago, Rock Island & Pac. R.R.*, 378 F.2d 879, 882 (10th Cir. 1967).

both the motion to remand and the motions to dismiss are based on the same issue: whether the nondiverse defendants were fraudulently joined, which would allow the Court to dismiss them and exercise jurisdiction. As Defendants correctly argue, Rule 12(b)(6) is not the correct standard where the stated basis for dismissal is fraudulent joinder. That is because "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted."[25] Defendants do not move to dismiss under Rule 12(b)(6). Instead, they seek dismissal under the "more exacting" standard that Plaintiff lacks a colorable claim against them, requiring dismissal on jurisdictional grounds. Under this standard, the Court should pierce the pleadings to determine whether Plaintiff has any possibility of recovering against the nondiverse Defendants. Thus, the Court decides the fraudulent joinder question as presented by the parties in the motion to remand and motions to dismiss.[26]

## III. Discussion

### A. Fraudulent Joinder

QT argues that neither QT West, Inc. nor QT West, LLC can be liable for the injuries sustained by Plaintiff because they did not own, operate, possess, or control the Parallel Parkway QT Store. Moreover, Kerr argues that he had no role in overseeing, training, or managing the Parallel Parkway QT store or its employees, and never owned nor had a role in designing and constructing the Parallel Parkway QT store. Plaintiff responds that the degree to which

---

[25] *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992).

[26] *Smoot*, 378 F.2d at 881–82 (affirming the district court's decision to grant a motion to dismiss that it construed as a motion for summary judgment by the fraudulently joined party and deny the plaintiff's motion to remand because "his 'continued joinder serves only to frustrate federal jurisdiction.'" (quoting *Dodd*, 329 F.2d at 85)); *Bond v. Gen. Motors Corp*, No. 05-1275-JTM, 2006 WL 279018, at *1 (D. Kan. Feb. 2, 2006) (considering a motion to remand together with the defendant's motion to dismiss because "the arguments in the two motions overlap" on the fraudulent joinder issue).

Defendants had a possessory or ownership interest in the Parallel Parkway QT store is in dispute given his allegations in the Petition; thus, the Court must resolve the issue in Plaintiff's favor. Plaintiff further argues that the Court should not consider Wells' or Kerr's affidavits because the Court cannot consider matters outside the pleadings on a Rule 12(b)(6) motion.

As the Court has already explained, the Rule 12(b)(6) standard does not apply here. Instead, the Court considers the entire record, including matters outside the pleadings, to determine if Plaintiff has any possibility of recovering from these Defendants under Kansas law. The Court is mindful that under the fraudulent joinder standard, it is not "compelled to believe whatever the plaintiff says in his complaint."[27] However, "[a] claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."[28]

The Court finds that the issues presented by Defendants' assertion of fraudulent joinder are straightforward and do not require an intricate analysis of state law. In order to establish negligence under Kansas law, Plaintiff must show that each Defendant owed a duty to Plaintiff and breached that duty, and a causal connection between the breach and the harm.[29] The existence of a legal duty is a question of law.[30] To hold a defendant liable for premises liability under Kansas law, "the defendant must be the owner, occupier, or possessor of the premises."[31] Indeed, under the Restatement (Second) of Torts, no duty exists if the defendant "has no right of

---

[27] *Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013).

[28] *Id.* (quoting *Batoff*, 977 F.2d at 853).

[29] *Gragg v. Wichita State Univ.*, 934 P.2d 121 (Kan. 1997) (quoting *Durflinger v. Artiles*, 673 P.2d 86, 91 (Kan. 1983)); *Estate of Belden v. Brown County*, 261 P.3d 943, 961 (Kan. Ct. App. 2011).

[30] *Gragg*, 934 P.2d at 128 (citation omitted).

[31] *Id.* at 130 (quoting *Miller v. Zep Mfg. Co.*, 815 P.3d 506, 513 (Kan. 1991)).

control over the condition causing the injury."[32]  The law on this issue is not ambiguous and therefore need not be resolved in favor of Plaintiff.

Moreover, the factual issue can be summarily decided on the basis of Defendants' affidavits, which directly contradict the allegations of ownership and control in Plaintiff's Petition.  According to Wells' affidavit, QT West, Inc. operated QT stores exclusively in Wichita, Kansas between 1997 and May 2020, and never owned, operated, or controlled the QT store on Parallel Parkway.  Similarly, Wells' affidavit establishes that QT West, LLC never owned, operated, or controlled the QT store on Parallel Parkway, and in fact does not own or operate any QT stores; its sole purpose is to issue QT gift cards.  Wells' affidavit establishes that Kerr never owned, designed, or constructed the QT store on Parallel Parkway.  Wells, as Vice President, General Counsel, and Corporate Secretary at QT, has personal knowledge about these facts.

Plaintiff offers no explanation for why his mere allegations of ownership and control sufficiently create an issue of fact.  Instead, he insists that the Court should not consider matters outside the pleadings, and characterizes Defendants' affidavits as mere denials of liability.  But under the applicable standard, the Court does not accept Plaintiff's assertions of ownership and control simply because they are alleged in the Complaint.  Defendants' straightforward affidavit about ownership and control by these QT business entities and Kerr conclusively shows that these three Defendants cannot be liable under a premises liability theory; thus, there is no possibility Plaintiff can recover from them in state court for negligence on the basis that they owned, operated, possessed, or controlled the Parallel Parkway QT store.

---

[32] *Id.*

Plaintiff separately alleges that Kerr owed him a duty of care because he oversaw, trained employees, and otherwise managed the QT store on Parallel Parkway at the time of the accident. An agent of a corporation who violates a duty owed to a third person is liable to that person for his torts.[33] The agent must "willfully participate[] in the tort."[34] Both Wells' and Kerr's affidavits establish that Kerr was not an area supervisor on the date of the accident. He was a division sales manager who had no role in overseeing or managing the QT store on Parallel Parkway on November 16, 2019. He was not responsible for purchasing or maintaining gasoline pumps at any QT stores. And he was not present at the Parallel Parkway on November 16, 2019. Thus, Plaintiff's allegations against Kerr are based solely on his status as a QT manager and not based on any direct participation in the negligence. As such, there is no reasonable possibility of recovery against Kerr under Kansas law.[35]

As stated above, the Court disregards the John Doe Defendants' alleged citizenship for purposes of determining removal jurisdiction and need not consider whether there is "no possibility" of Plaintiff recovering from them in state court because fraudulent joinder is not applied to these Defendants. Under the fraudulent joinder doctrine, Kerr, QT West, Inc., and QT West, LLC must be dismissed. Because Plaintiff is a citizen of Kansas and QT is a citizen of Oklahoma, the Court finds that the remaining parties are diverse and the amount in controversy exceeds $75,000. Thus, Plaintiff's motion to remand is denied.

---

[33] *Kerns ex rel. Kerns v. G.A.C., Inc.*, 875 P.2d 949, 957–58 (Kan. 1994) (citing *McFeeters v. Renollet*, 500 P.2d 47, 49–50 (Kan. 1972)).

[34] *Boyce v. Wal-Mart Stores, Inc.*, No. 16-2221-JWL, 2016 WL 2941339, at *1 (D. Kan. May 20, 2016) (citing *Kerns*, 875 P.2d at 957–58).

[35] *Accord id.* at *2; *Hensley v. Orscheln Farm & Home, LLC*, No. 11-4159-CM-GLR, 2012 WL 628201, at *5 (D. Kan. Feb. 27, 2012).

B.     **Motion for Extension of Time to Serve John Doe Defendants**

Plaintiff moves for an extension of time to serve the John Doe Defendants. Specifically, he asks that the Court either "toll" the deadline to serve until it decides the motion to remand, or grant an additional 30 days to serve after it rules on the motion to remand. Fed. R. Civ. P. 4(m) states the relevant rules for the timing of service of process:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.[36]

To demonstrate good cause, the plaintiff must make a showing greater than excusable neglect.[37] The Tenth Circuit has explained that even if a plaintiff has not shown good cause for the failure to timely effect service, the district court should still consider whether a permissive extension of time may be warranted.[38] "At that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service.[39] The Court is to consider several factors that include (1) whether the applicable statute of limitations would bar the refiled action and (2) whether Defendants have been prejudiced by the delay of service.[40]

Defendants seek dismissal of the John Doe Defendants in their response to the motion to remand. They argue further in response to the motion for extension of time to serve that the statute of limitations has run, so Plaintiff may not substitute them with named parties and

---

[36] Fed. R. Civ. P. 4(m).

[37] *Value Place Franchise Servs., LLC v. Hugh Black-St. Mary Enters., Inc.*, No. 14-1152-DDC, 2015 WL 225790, at*3 (D. Kan. Jan. 16, 2015) (citing *Arey v. Progressive Halcyon Ins. Corp.*, No. 05-2553-JWL, 2007 WL 1018798, at *2 (D. Kan. Apr. 3, 2007)).

[38] *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).

[39] *Id.*

[40] *Id.* at 842; *Spiess v. Meyers*, 483 F. Supp. 2d 1082, 1097 (D. Kan. 2007) (citations omitted).

therefore should not be allowed more time to serve.  Although the Court disregards the citizenship of the John Doe Defendants for purposes of determining diversity jurisdiction, it does not follow that they must be dismissed.  There is no motion to dismiss pending under Rule 12(b)(6), and because they are disregarded under 28 U.S.C. § 1441 when determining diversity jurisdiction, it would not be appropriate to dismiss them as nondiverse parties under the fraudulent joinder doctrine.

Defendants argue that the John Doe Defendants must be identified and replaced within the limitations period, which ended on November 16, 2021.  Because this Court sits in diversity, it must apply Kansas law to determine whether the statute of limitations has run.[41]  Under Kansas law, a two-year statute of limitations applies to Plaintiff's negligence claims.[42]  The fire occurred on November 16, 2019, and Plaintiff filed his suit in Wyandotte County District Court on November 16, 2019, the last day of the two-year period.  "Generally, the inclusion of a John Doe in a complaint does not stop the statute of limitations from running."[43]

There are two circumstances where a Plaintiff's claim may still be timely: where the limitations period is tolled; or where an amendment relates back to the original filing.[44]  Plaintiff argues that the statute of limitations was tolled for more than one year, citing Kansas Supreme Court Orders that suspended statutes of limitations in Kansas between March 19, 2020 and April 15, 2021, due to the COVID-19 pandemic.  After accounting for this period of tolling, Plaintiff maintains that the statute of limitations for his negligence action does not expire until December

---

[41] *Dow Chem. Corp. v. Weevil-Cide Co.*, 897 F.2d 481, 483–84 (10th Cir. 1990) (citation omitted).

[42] K.S.A. § 60-513(a)(4).

[43] *Dartez v. Peters*, No. 15-3255-EFM-DJW, 2018 WL 1138282, at *5 (D. Kan. Mar. 2, 2018) (first citing *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004); and then citing *Sellers v. Cline*, No. 13-3076-MLB-KMH, 2015 WL 1262895, at *2 (D. Kan. Mar. 19, 2015)).

[44] *Id.* (citation omitted).

14, 2022.  The Court agrees.  Under the Kansas Supreme Court's Administrative Orders, the statute of limitations was tolled between March 19, 2020 and April 15, 2021.[45]  Therefore, his time to name and replace the John Doe Defendants has not expired.

Plaintiff also argues in this motion that because discovery has been stayed while the dispositive motions have been pending, he has been unable to obtain the discovery necessary to replace the John Doe Defendants.  This point is well taken, and is more than sufficient to show good cause for an extension of the service deadline under Rule 4(m).

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff Jose Estala Ortiz's Motion to Remand (Doc. 16) is **denied** and the motions to dismiss filed by Defendants QuikTrip West, Inc. (Doc. 11), QuikTrip West, LLC (Doc. 13), and Justin Kerr (Doc. 9) are **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Toll Deadlines to Serve (Doc. 25) is **granted**.  Plaintiff's deadline to serve the John Doe Defendants is extended to **May 20, 2022**.

**IT IS SO ORDERED.**

Dated: April 11, 2022

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[45] Docs. 27-1, 27-2.